ALLEN and another, Appellants, vs. BROOKS, Respondent.

*September 5 — October 2, 1894.*

*Vendor and purchaser of land: Contingent interest: Void devise: Setting aside deed for fraud.*

A testator devised lands to the city of Superior before it was incorporated. Some of the heirs quitclaimed their interests therein, for $100 each, to the defendant, a son-in-law of their uncle, who was to contest the validity of the devise, and if successful was to pay each $300 more. Had their title been unquestioned their interests would have been worth much more, but were then not marketable. The devise was afterwards adjudged void. It appearing that the grantors were not induced to make the deed by any misrepresentation, concealment, or undue influence, that at the time they were anxious to sell, and that they knew the state of the title as well as the defendant did, and knew, also, that he depended entirely upon the contingency of success in the proposed legal proceedings to secure any interest in the lands through their deed, it is *held* that they are not entitled to have the deed set aside on the ground of fraud.

APPEAL from the Circuit Court for *Douglas* County.

The facts are sufficiently stated in the opinion. The plaintiffs appeal from a judgment in favor of the defendant.

For the appellants there was a brief by *Reed, Grace & Reed* and *John O. Winship*, and oral argument by *H. H. Grace* and *Mr. Winship*.

*Champ Green*, for the respondent.

ORTON, C. J.   A brief statement of the facts is as follows: Peter Dean, of the city of Duluth, Minn., died on the 4th day of January, 1884, seised of the following lands, to wit: The east half of the southeast quarter of section 13, town 48, range 13 west, and the southeast quarter of section 34, town 49, range 14 west, situated in Douglas county, Wis.; also twenty lots in the city of Duluth, Minn.   His sole heirs at law were his two brothers Thomas Dean and Dennis Dean;

his sister, Mary Duryea; John J. Dean, *Sarah A. Teasdale*, and *Catherine L. Allen*, the children and sole heirs of his deceased brother John Dean; Johanna D. Hayes, Mary T. Saddler, and William Dean, the children and sole heirs of his deceased brother Alexander Dean. He left his last will and testament, which was afterwards admitted to probate, by which he bequeathed to his sister, Mrs. Mary Duryea, in copper and bank stocks and money, to the amount of $25,000, and devised to the city of Superior, Wis., the above-described eighty acres and 160 acres of land, situated at or near that place, to be used for public purposes, and to the village or city of Duluth the said lots situated therein, to be sold after one year and a half, and the proceeds thereof used by said city of Duluth for the purchase and beautifying of small parks, from five to ten acres in extent, throughout said city, for the use of the inhabitants thereof.

At the time said will was made, there was no such municipal corporation as the city of Superior in Wisconsin in existence. The heirs knew the provisions of the will, and that there was at least a question whether the bequest to the city of Superior was valid for that reason. There was, however, at the time, a community commonly called the " City of Superior" within the corporate limits of the town of Superior, which was afterwards incorporated as the city of Superior by an act of the legislature in the year 1889. If the title had been unquestionable, said real estate in Wisconsin was reasonably worth the sum of $80,000; but, as the title was then involved in doubt, it had no marketable value whatever.

The said Dennis Dean was the father-in-law of the defendant, *George L. Brooks*, and they resided near where the lands were situated. In the year 1889, the said Dennis Dean, being desirous of having proceedings instituted to test the legality of the will, called upon the said John J. Dean, who resided in Milwaukee, and who was the brother

of the plaintiffs, and suggested to him to write to the defendant, whom he had requested to take an interest in the subject of this claim of the heirs, for the purpose of having such proceedings instituted. On the 27th day of March, 1889, the said John J. Dean, being fully authorized to act on behalf of the plaintiffs, wrote to the defendant on behalf of himself and the plaintiffs, and requested him to take the matter at once in hand and push it through, and that all the heirs would join therein, and expressed the hope that he would take it and realize something out of it for the heirs as well as for himself, and offered to settle in any way he and his uncle Dennis might arrange it. On the 8th day of April, following, the said defendant wrote to the said John J. Dean, in reply, that Dennis Dean had said something about his purchasing some interest in the property for the purpose of contesting said bequest and making arrangement to sustain the suit; that as to the value of the interests, in the present shape it is in, it is impossible to determine; that the Wisconsin land is wild, and about six miles from town, and has been platted and many of the lots sold; and that, as he had requested it, he would make him a proposition to pay $300 for his and his sisters' interest in the lands, to be conveyed by quitclaim deed, and if he perfects the title he will pay to each one $300 more, making $1,200 in all. On April 15th following, John J. Dean wrote the defendant, in reply, that his sisters (the plaintiffs) and himself agree to the proposition if he (the defendant) thinks that nothing better can be done. This is the effect of this correspondence, but not literal. John J. Dean communicated this arrangement to the plaintiffs, and thereupon the sale was consummated by their conveying to the defendant by quitclaim deed all their right, title, and interest in said Wisconsin real estate, and $200 was paid thereon to the plaintiffs; and on the 20th day of April, 1889, the defendant gave to the plaintiffs an agree-

Allen and another vs. Brooks.

ment in writing in effect that, if he can and do acquire a title to the lands conveyed by them at this date by quit-claim deed, he will pay them each $300 more.

The plaintiffs tendered to the defendant the money so paid and said agreement, and demanded a reconveyance of their said interests; and, upon his refusal so to do, they commenced this action to have said deed declared void on the ground of fraud, covin, and misrepresentation.

The above facts were in effect found by the circuit court, and appear to have been established by the evidence. The false representations charged in the complaint are as follows: (1) That there was some property that belonged to Peter Dean that was not disposed of by the will, of the value of $100. (2) That he could so manage the property as to make for the heirs $300 to each, and that it was not worth more than $400. (3) That the other heirs had disposed of their interests at the same rate. (4) It is charged that the defendant knew that the will was void, and that the interest of each heir was of the value of $40,000. (5) That the defendant concealed the true state of the title and made said misrepresentations for the purpose of inducing the plaintiffs to execute the deed. (6) That the plaintiffs were ignorant of the true state of the title, and of the value of the Wisconsin lands. The learned judge of the circuit court found " that the plaintiffs intended, by the conveyance made by them to the defendant, to sell and convey to him all their right, title, and interest in the real estate in question; that they were not induced to make said deed by any fraud or trick on the part of the defendant or any other person; that they knew, when they made said conveyance to defendant, the condition of the title of said land substantially as well as the defendant; knew the conditions of said will by which the said Peter Dean attempted to bequeath said land for public purposes, and that, unless said bequests were judicially determined to be illegal and

void, they had no interest whatever in said real estate; and they also knew that the defendant, in taking said conveyance from them, proposed instituting legal proceedings to test the validity of said will, and that he depended entirely upon the contingency of success in said proposed legal proceedings to secure any interest whatever in said lands through or under said quitclaim deed." These findings were clearly supported by the evidence.

The above correspondence and the agreement which the defendant gave the plaintiffs at the time of the execution and delivery of the deed show that the plaintiffs knew the condition of the title to their estates, as it was then, and as well as the defendant. The agreement contemplates that there might be a chance for the defendant to secure a good title by having the will declared void in respect to the Wisconsin lands, for it provides that in such a contingency he shall pay them an additional $300 each. It is true that the defendant was the son-in-law of their uncle Dennis Dean, and that he occupied towards them somewhat a position of trust and confidence, and might, therefore, the more readily influence them to sell their interests in the estate to him. But there does not appear to be any evidence that the defendant misrepresented the state of the title, or influenced them unduly to sell their interest to him, or that he concealed from them any fact that he knew himself about the estate or the condition of the title. It seems that the plaintiffs needed this ready money and were anxious to get it. The plaintiffs' brother, John J. Dean, wrote to the defendant: "If agreeable and convenient, we would like you to arrange so we could realize some of it [the money] before Easter; so the girls say." John J. Dean was their duly authorized agent to arrange the terms of the sale, and they ratified everything he did in the matter, and they executed the quitclaim deed without hesitation or objection. The parties seem to have stood on equal terms in

relation to the bargain. John J. Dean had written the defendant: "I hope you will take it and realize something out of it for us as well as for yourself. At present it would be a Godsend. . . . I speak for *Kate* and *Sarah*, too." What the defendant did with his interest in the lands after he purchased them from the plaintiffs and other heirs has perhaps nothing to do with this case, for this action involves nothing except what occurred at the time of the sale and the conditions then present. But the court found, in effect, that the defendant and the other heirs afterwards commenced an action against the city of Superior to have the bequest of the Wisconsin lands declared void, and the circuit court adjudged it void; and, pending an appeal to this court, the matter was settled in such way that the defendant, on paying his proportion for legal services, finally received two fifteenths of two thirds of one half of the Wisconsin lands. This may tend to show, perhaps, how problematic and uncertain the interest of the plaintiffs was at the time of the sale, and the court found that such interest was not then of any marketable value. It seems to be conclusive that there was no fraud in the sale.

From the judgment of the circuit court, declaring this bequest to the city of Superior void, it may now appear that this was a hard bargain for the plaintiffs, as they knew it would be in such an event, and they provided against it by an agreement of the defendant to pay them each $300 more for their interest. But it does not appear that this was a hard bargain at the time it was made, or that the consideration was inadequate, or that it was not then perfectly fair and honest. Future eventualities of a good title and increased values cannot be considered in such a case as the grounds of avoiding the sale. Such a criterion would avoid very many *bona fide* contracts. I have specially considered but one of the findings of the circuit court, and that one disposes of the question of fraud in the procurement of

the deed. That is the only material issue under the pleadings. The findings of the court on the facts are full, and appear to be fair and sustained by the evidence.

The learned counsel of the appellants, in the midst of the trial, made an offer to amend the complaint " to correspond with the facts." No amendment was drawn up or submitted, and the brief of the learned counsel does not suggest what specific amendment of the complaint is claimed to have been made. The gravamen of the complaint, as it stands, is that the deed was obtained by false and fraudulent representations and concealment. It is not suggested how the proposed amendment should affect or change these, as the grounds of the action. The proposed amendment is ignored in the findings of fact and conclusions of law, and is too vague and indefinite to be considered by this court. The case comes to this court as it was tried and determined in the court below, and we are governed by the record for a knowledge of case. If it is claimed that the facts in evidence support some other cause of action than that alleged in the complaint, it is elementary that such an amendment could not be made.

*By the Court.*— The judgment of the circuit court is affirmed.